FILED
CLERK

1:39 pm, Dec 27, 2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
UNITED GENERAL TITLE INSURANCE
COMPANY,

                              Appellant,

             -against-

CHRIS KARANASOS, also known as
Christoforos Karanasos,

                              Appellee.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
15–cv–06931 (ADS)

## APPEARANCES:

**Belowich & Walsh LLP**
*Attorneys for the Appellant*
140 Grand Street
8th Floor
White Plains, NY 10601
       By:     Daniel Walsh, Esq., Of Counsel

**The Law Office of John M. Stravato**
*Attorney for the Appellee*
P.O. Box 298
Bethpage, NY 11714
       By:     John M. Stravato, Esq., Of Counsel

**SPATT, District Judge**:

       Before the Court is an appeal from an order by the United States Bankruptcy Court for the

Eastern District of New York (Trust, J.) by appellant creditor United General Title Insurance

Company ("UGT"). UGT contends that that Bankruptcy Court's denial of its complaint objecting

to the discharge of appellee debtor Chris Karanasos' (the "Debtor") was reversible error.

Specifically, UGT states that the Debtor's debt should not be discharged pursuant to 11 U.S.C.

§ 727 ("Section 727") because it proved, by a preponderance of the evidence, during a stipulated

trial that was supplemented with testimony, that the Debtor fraudulently concealed a secret interest

1

in property and made false oaths with fraudulent intent. For the reasons that follow, the Court finds that the Debtor's discharge should be denied under both theories put forward by UGT; and remands the case for further proceedings consistent with this order.

## I. BACKGROUND

**A. The Relevant Facts**

Although the facts in this case have been substantially set forth in three different decisions, the Court will once again briefly review the facts. They are drawn from the parties joint pre-trial memorandum; the stipulated record; and the brief testimony from the supplemental trial. The bankruptcy record, comprised of six hundred and sixty–nine pages, includes all of these items as well as complaints, petitions, schedules, memoranda and orders. Any references to the bankruptcy record will be denoted as "R."

**1. Real Property Interests of the Debtor**

The two pieces of real property at issue throughout this case are the "Rockville Centre Property" and the "Manhattan Property." The Rockville Centre Property is located at 390 Woodbridge Road in Rockville Centre, New York, and the Manhattan Property is located at 408 East 120th Street in New York, New York.

The Debtor and his wife, Rosa Karanasos ("Mrs. Karanasos"), have resided in the Rockville Centre Property since 2002, when Mrs. Karanasos acquired title to the property. She financed the purchase with a mortgage from Interamerican Bank. Mrs. Karanasos and the Debtor paid that mortgage with funds from their joint checking account. On June 20, 2003, Mrs. Karanasos conveyed title to herself and the Debtor. Thereafter, the Debtor and Mrs. Karanasos obtained a mortgage from Flagstar Bank with a principal amount of $265,000, and Mrs. Karanasos satisfied her mortgage with Interamerican Bank. The Debtor and Mrs. Karanasos made payments

on the Flagstar Bank mortgage with funds from their joint checking account. The Debtor and Mrs. Karanasos also obtained a home equity line of credit with JP Morgan Chase Bank (the "Chase HELOC") in 2003 for $210,000.

On December 17, 2008, the Debtor and Mrs. Karanasos re-conveyed title for the Rockville Centre Property back to Mrs. Karanasos by deed (the "2008 Transfer"). The deed was recorded on April 9, 2009 in the Nassau County Clerk's Office. Subsequent to the transfer of title, the Debtor remained liable on the Flagstar Bank mortgage and the Chase HELOC, and the Rockville Centre Property served as collateral for both loans.

The Debtor continued to use and enjoy the Rockville Centre Property after he conveyed his interest to his wife. He and his wife took a deduction on their 2010 joint federal tax return for real estate taxes and mortgage interest payments on the Rockville Centre Property; they shared the mortgage and utility obligations related to the Rockville Centre Property; and he identified the Rockville Centre Property as his primary address in his bankruptcy petition.

Throughout the proceedings, the Debtor has claimed that one of the reasons for the 2008 Transfer was his desire to acquire the Manhattan Property as an investment property. In September 2008, the Debtor allegedly invested $200,000 in the Manhattan Property using $100,000 from the Chase HELOC and $100,000 from a personal line of credit. He loaned this $200,000 to Mohammed Khan ("Khan"), who would acquire title to the Manhattan Property with the Debtor as a joint tenant. Khan agreed to repay the Debtor the full $200,000 with interest, and, as collateral, Khan gave the Debtor an unrecorded deed conveying Khan's interest in the Manhattan Property. If Khan had paid the Debtor in full, the Debtor would have conveyed full title to the Manhattan Property to Khan. However, Khan defaulted and the Debtor acquired sole title to the Manhattan Property.

Mrs. Karanasos did not approve of the Manhattan Property investment, and the Debtor claims that she only permitted him to draw $100,000 from the Chase HELOC on the condition that she obtain full title to the Rockville Centre Property. The Debtor said in his deposition that "for her[,] the only way to let me borrow the money from my home line of credit as investment to [the Manhattan] property, I had to take off my name from the [Rockville Centre] deed to protect her and our children." (R. at 39). The deed for the 2008 Transfer states that the consideration for the conveyance was $100,000. While the parties agreed in their joint pre-trial memorandum that the Debtor did not pay or transfer any consideration to Mrs. Karanasos for the 2008 Transfer, the deed recording that transfer indicates that the consideration for the conveyance was $100,000.

Mrs. Karanasos filed for bankruptcy protection on October 5, 2010, and again on December 3, 2010. Mrs. Karanasos' bankruptcy petition in her first filing identified her interest in the Rockville Centre Property as a "Fee Simple" and a "Tenant by the entirety." Her first petition was dismissed without her receiving a discharge of her debt. In her second bankruptcy petition, she did not identify the nature of her interest in the Rockville Centre Property—she left the "Nature of Debtor's Interest" blank in relation to that property on her Schedule A for that petition. She received a discharge of debt in her second case.

The Debtor identified the Rockville Centre Property as his street address in his bankruptcy petition, but did not identify, disclose or explain any interest he maintained in that property in his schedules or his statement of financial affairs. He used the term "sole tenant" to describe his ownership interest in the Manhattan Property.

## 2. Lawsuits Against the Debtor

On February 4, 2008, UGT commenced a civil action in New York State Supreme Court civil term against the Debtor and two other parties, GE Abstract and Esther Serrano, for damages

sustained in connection with breaches of an agency agreement and related personal guarantees (the "GE lawsuit"). The 2008 Transfer occurred while the Debtor was defending the GE lawsuit. A judgment of $677,351 was entered against the Debtor and his co-defendants in the GE lawsuit.

On November 5, 2010, UGT commenced a separate action in New York State Supreme Court against the Debtor and Mrs. Karanasos, seeking a judgment declaring that the 2008 Transfer was fraudulent and void (the "fraudulent conveyance action"). The Debtor did not answer or otherwise appear in the action, and he is in default. It is unclear from the record whether any type of judgment was entered in that action.

The Debtor listed the GE lawsuit in his Statement of Financial Affairs, but did not list the fraudulent conveyance action in either his Schedules or his Statement of Financial Affairs. The Debtor declared, under penalty of perjury, that the information provided in his bankruptcy petition, and the annexed summary and schedules, were true and correct.

## B. Procedural History

On July 3, 2011, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 6, 2011, UGT commenced an adversary proceeding against the Debtor, asserting that the Debtor's discharge should be denied pursuant to Section 727. UGT alleged that the Debtor had 1) concealed a secret interest in the Rockville Centre Property within one year before filing his petition for bankruptcy, and that he did so with the intent of hindering, delaying or defrauding his creditors; and 2) knowingly and fraudulently made three material false oaths: failing to disclose his interest in the Rockville Centre Property; failing to disclose UGT's fraudulent conveyance action against the Debtor; and misrepresenting his ownership interest in the Manhattan Property as that of a sole tenancy.

The parties agreed to trial by stipulated record, and the Bankruptcy Court ordered that UGT's complaint objecting to the Debtor's discharge be denied. The Bankruptcy Court found that UGT failed to prove, by a preponderance of the evidence, that the Debtor had concealed a secret interest in the Rockville Centre Property, and, because it found that the Debtor did not conceal an interest in the property, it did not address whether any concealment was fraudulent. The Bankruptcy Court also found that the Debtor made false oaths by failing to disclose the civil action against him and misrepresenting his ownership interest in the Manhattan Property. However, the Bankruptcy Court held that the Debtor did not make the false oaths with fraudulent intent, and therefore denied UGT's complaint on that basis as well.

UGT appealed the bankruptcy court's decision and Judge Joseph F. Bianco found that the bankruptcy court committed several errors. *United Gen. Title Ins. Co. v. Karanasos*, No. 13–cv–7153, 2014 WL 4388277, at *1 (E.D.N.Y. Sept. 5, 2014). Specifically, Judge Bianco found that the Debtor had concealed an ownership interest in the Rockville Centre property, *id.* at *10, and that he committed two false oaths when he failed to disclose his interest in that property and when he failed to disclose the fraudulent conveyance action. *Id.* at *12. As to the Debtor's classification of his interest in the Manhattan Property as a "sole tenant," Judge Bianco found that even if it was false, it was not fraudulent. *Id.* Although the 2008 Transfer occurred more than one year before the Debtor filed for bankruptcy, Judge Bianco found that the Debtor had concealed the Rockville Centre Property under the "continuous concealment doctrine," which provides that a concealment can be found to exist in the year before the bankruptcy petition even where the initial concealment occurred before the one-year period, if the debtor allowed the property to remain concealed during the year in question. *Id.* at *10; *In re Boyer*, 328 F. App'x 711, 714–15 (2d Cir. 2009) (summary order). Judge Bianco remanded the case back to the Bankruptcy Court to determine 1) whether

the Debtor "harbored improper intent in concealing his" interest in the Rockville Centre Property "for purposes of § 727(a)(2)(A)," *Karanasos*, 2014 WL 4388277, at *1; and 2) whether the debtor made his two false oaths with fraudulent intent for the purposes of § 727(a)(4)(A). *Id.* Judge Bianco left to the Bankruptcy Court's discretion whether to "rely solely on the stipulated record, request supplemental submissions, and/or conduct a trial on any disputed issues." *Id.* at *10.

The Bankruptcy Court supplemented the original stipulated trial record with 18 stipulated exhibits and live testimony from the Debtor consisting of nine pages. The Debtor testified on March 10, 2015. The stated purpose of the live trial was to determine the Debtor's intent. On October 29, 2015, the Bankruptcy Court found that UGT did not satisfy its burden of proof in that it did not prove by a preponderance of the evidence that the Debtor either concealed his property interest or made false oaths with fraudulent intent.

UGT filed a notice of appeal on December 4, 2015 and filed their brief as appellant on February 19, 2016. The Debtor filed his brief as appellee on April 4, 2016 and UGT filed its reply brief on April 4, 2016.

## II. DISCUSSION

### A. Applicable Legal Standard

The district court has jurisdiction to hear appeals from rulings of the bankruptcy court. 28 U.S.C. § 158(a). Final orders of the bankruptcy court are appealable to the district court. *Id.*; *see also Morse v. Rescap Borrower Claims Tr.*, No. 14–cv–5800, 2015 WL 353931, at *3 (S.D.N.Y. Jan. 26, 2015).

In reviewing judgments by the bankruptcy court, the district court functions as an appellate court. *See In re CBI Holding Co., Inc.*, 529 F.3d 432, 448–49 (2d Cir. 2008). Therefore, the district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of

law *de novo*.  *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990); *see also* FED. R. BANKR. P. 8013 (advisory committee note); FED. R. CIV. P. 52(a)(6).  Mixed questions of fact and law are also reviewed *de novo*.  *See In re Kassover,* 448 B.R. 625, 631 (S.D.N.Y. 2011); *In re Adelphia Commc'ns Corp.,* 298 B.R. 49, 52 (S.D.N.Y. 2003) (citing *In re United States Lines, Inc.,* 197 F.3d 631, 640–41 (2d Cir. 1999)).  Clear error exists when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CBI Holding Co.,* 529 F.3d at 449 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

This Court will also review the stipulated record and any conclusions drawn from it *de novo*, because "where a case is tried . . . on a stipulated record, it is clear that the . . . review is *de novo* because the . . . rulings are necessarily conclusions of law or mixed fact and law." *Karanasos*, 2014 WL 4388277, at *5 (finding that although the Second Circuit has not explicitly articulated the standard of review for a bankruptcy case tried on a stipulated record, the court would review the findings *de novo* because the Second Circuit uses that standard when reviewing district court decisions on a stipulated trial record).  As stated above, the entire record, with the exception of the Debtor's live testimony consisting of nine pages, was a stipulated record.  Therefore, the Court will review the Bankruptcy Court's findings *de novo*, with the exception of any conclusions drawn solely from the Bankruptcy Court's reliance on its interpretation of the Debtor's credibility during the brief live testimony.

### 1.  As to the Denial of a Discharge Under Section 727(a)(2)(A)

Section 727(a)(2)(A) states that:

(a) [t]he court shall grant the debtor a discharge, unless—
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed,

destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A). To prove that a debtor violated Section 727(a)(2)(A), a creditor must establish, "by a preponderance of the evidence, (1) an act (i.e., a transfer or concealment of property); and (2) an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor). Moreover, the creditor must show that *both* of these components were present during the one–year period before bankruptcy." *Karanasos*, 2014 WL 4388277, at *6 (quoting *Boyer*, 328 F. App'x at 714 (internal quotation marks omitted)). To determine whether there was improper intent, courts look to certain 'badges of fraud' for indirect proof, because intent is rarely displayed through clear and direct proof. *See Salomon v. Kaiser,* 722 F.2d 1574, 1582 (2d Cir. 1983); *Boyer*, 328 F. App'x at 715; *In re Vidro*, 497 B.R. 678, 687 (Bankr. E.D.N.Y. 2013). Badges of fraud include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Kaiser*, 722 F.2d at 1582–83.

As stated above, Judge Bianco found that UGT had established by a preponderance of the evidence that the Debtor had concealed the Rockville Centre Property under the continuous concealment doctrine; and remanded the case back to the bankruptcy court solely to determine, as to UGT's 727(a)(2)(A) claim, what the Debtor's intent was when he concealed that interest. As far as the badges of fraud, Judge Bianco also found that the second, third and fifth badges listed

above were clearly present because the Debtor transferred the Rockville Centre Property to his wife; he remained there after the transfer; and he transferred the property after UGT had commenced the GE lawsuit against him. *Karanasos*, 2014 WL 4388277, at *8. This Court agrees with Judge Bianco's findings regarding the badges of fraud, examines the remaining factors, and finds that the Debtor possessed the requisite fraudulent intent.

### a. The Adequacy of the Consideration

The Bankruptcy Court found that there was consideration for the 2008 Transfer because the Debtor took money from an exempt asset and placed it in an asset that could be reached by creditors. UGT argues that there was no consideration because 1) the only evidence that the Debtor invested the money from the HELOC in the Manhattan Property is the Debtor's own testimony, which should not be believed; 2) there could not have been consideration even if there was such an exchange because the Debtor still had an actual interest in the Rockville Centre Property and therefore he did not receive anything; 3) the transfer did not benefit the Debtor's bankruptcy estate and therefore does not qualify as consideration; 4) the Debtor never requested to use the homestead exemption at any point during his bankruptcy proceeding and therefore the exemption could not serve as a basis for his discharge; and 5) even if the Debtor had claimed the homestead exemption, the exemption would only have precluded creditors from attaching liens to a portion of the total value of the Rockville Centre Property.

The Debtor states in opposition that the conveyance could not have been fraudulent because "[t]he Rockville Centre [P]roperty was mortgaged and had no non–exempt equity for a creditor to take an interest in by virtue of the homestead exemption;" that as a result of the 2008 Transfer, "creditors were clearly better off as a result . . . of the taking of exempt funds and using it to purchase a non-exempt asset;" and the value of the bankruptcy estate was not diminished in any

way. The Court agrees with UGT that there was inadequate consideration because there was no consideration exchanged.

"Transactions between husband and wife must be closely scrutinized to assure that they are fair and honest and not merely contrivances resorted to for the purpose of placing a spouse's property beyond the reach of creditors." *In re Carl*, 517 B.R. 53, 64 (Bankr. N.D.N.Y. 2014) (citing *Laines v. Gold,* 352 B.R. 397, 404 (Bankr. E.D.Va. 2005)); *see also In re Sicari*, 187 B.R. 861, 872 (Bankr. S.D.N.Y. 1994) ("A transfer of property to relatives will be subject to close scrutiny, and the relationship of the parties in conjunction with other circumstances will often make the plaintiff's case compelling notwithstanding the absence of direct evidence of fraud." (quoting *Loeber v. Loeber (In re Loeber),* 12 B.R. 669, 675 (Bankr. D.N.J. 1981) (internal quotation marks and alterations omitted))).

The parties agreed that Mrs. Karanasos did not receive any consideration for the 2008 Transfer. The Bankruptcy Court found that there was adequate consideration because the Debtor "received a substantial benefit from the transaction" in that he received $100,000 from the HELOC despite the fact that he no longer had any interest in the Rockville Centre Property and invested it in the Manhattan Property, which he believed would be profitable. (R. at 226). The Bankruptcy Court held that the Debtor took a risk by taking the money from the HELOC, which was protected by the homestead exemption, and investing it in the Manhattan Property, where investors could place liens on the money.

In the Court's view, assuming that the Debtor and his wife made this arrangement, the Debtor did not in fact receive anything. As Judge Bianco said in the original appeal, if the 2008 Transfer actually occurred in the manner that the Debtor claims it did, it was a mortgage, and the Debtor still had an ownership interest in the property. If "Mrs. Karanasos demanded the deed to

the property as security for debtor's having borrowed an additional $100,000.00 against the marital home . . . then the conveyance would be a mortgage, and debtor would have retained an ownership interest in the property." *Karanasos*, 2014WL4388277, at *9 (quoting N.Y. REAL PROP. LAW § 320 ("A deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage . . . ."); *Leonia Bank v. Kouri,* 3 A.D.3d 213, 772 N.Y.S.2d 251, 254 (N.Y. App. Div. 2004) ("[T]he courts are steadfast in holding that a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor a conditional sale, but a mortgage, and that the grantor and grantee have merely the rights and are subject only to the obligations of mortgagor and mortgagee.")).

Even if the 2008 Transfer occurred in the manner the Debtor claims that it did, neither side really received anything. Mrs. Karanasos did not receive any consideration, as stipulated, because the Debtor continued to use and enjoy the premises and maintained a *de facto* ownership interest. The Debtor lived there, made mortgage payments, and took tax deductions relating to the Rockville Centre Property after the 2008 Transfer. Mrs. Karanasos even listed her ownership interest as a tenant by the entirety in her bankruptcy schedule. It stands to reason therefore, that since the Debtor maintained a *de facto* ownership interest in the Rockville Centre, he did not receive any consideration because he only took something which he already possessed. Indeed, "whether debtor's transfer of the Rockville Centre Property to his wife was really a mortgage or a total sham transaction is immaterial," *Karanasos*, 2014WL4388277, at *9. Whether the 2008 Transfer was a sham or a mortgage, the Debtor had an ownership interest in the Rockville Centre Property and therefore he did not receive consideration.

The Bankruptcy Court's decision is apparently contrary to Judge Bianco's decision because Judge Bianco said that "Mrs. Karanasos did not give debtor $100,000.00 in exchange for debtor's interest in the Rockville Centre Property. Instead, as a condition for allowing debtor to draw $100,000 on the Chase HELOC that encumbered their home, Mrs. Karanasos demanded that debtor remove his name from the deed to protect her and their children." *Id.* at *3. This Court agrees with Judge Bianco's assessment. The Debtor did not receive anything from his wife because he took $100,000 from a home in which he retained an actual ownership interest. Nor did he give up anything because he retained an actual ownership interest. "In determining the adequacy of consideration, the focus is on the effect that the transfer had on the assets of the bankruptcy estate, not on what changed hands between the debtor and the transferees. No consideration ever actually came into appellant's hands." *In re Pisculli*, 426 B.R. 52, 67 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011). The same is true here—no consideration came into either the Debtor's hands or his wife's hands.

The Court also finds that the Bankruptcy Court's reliance on the homestead exception was misplaced. The Bankruptcy Court's decision appears to place importance on the homestead exception because, assuming that it would have applied to the $100,000 from the Chase HELOC, the Debtor "placed the money in harm's way" by moving it from an exempt asset to an asset that was not exempt.

First, there is nothing in the record to suggest that the Debtor ever claimed or sought to utilize the homestead exemption. The Debtor lists the Chase HELOC in his Schedule D, but does not list the property that the HELOC encumbers, nor does it list the description or market value of the property. The Debtor also did not list either the Rockville Centre Property or the Chase HELOC as exempt in his Schedule C. Mrs. Karanasos did claim the Rockville Centre Property as

exempt in her Schedule C, and she only claimed that $50,000 was exempt, which was the maximum when she filed. Mrs. Karanasos lists the Rockville Centre Property in the description of the property as subject to the Chase HELOC lien in Schedule D. The Bankruptcy Court assumes that the Debtor would have claimed the homestead exemption when he did not. *See In re Murray*, 249 B.R. 223, 230–31 (E.D.N.Y. 2000) ("Before an exemption can be claimed, it must be estate property. Section 522(1) of the Bankruptcy Code specifically directs a debtor to file a list of property that the debtor claims as exempt. Property is not exempt by fiat of the debtor, but only through a process of compliance with the statutory disclosures and then by order of the bankruptcy court . . . .") (internal citations and quotation marks omitted); *In re Antoniou*, 515 B.R. 9, 20 (Bankr. E.D.N.Y. 2014) ("The focus in this analysis is on the fraudulent conduct itself, not the value of the assets in question.").

Second, the homestead exemption would not have been available to the Debtor because he sought to conceal his interest in the Rockville Centre Property. A debtor cannot claim an exemption on something that he concealed. "[A] debtor may not claim as exempt, property that he concealed and failed to disclose on his bankruptcy schedules." *In re Estarellas*, 338 B.R. 538, 541 (Bankr. D. Conn. 2006) (quoting *In re Markmueller,* 165 B.R. 897, 899–900 (Bankr. E.D.Mo. 1994), *aff'd,* 51 F.3d 775 (8th Cir. 1995)). In fact, 11 U.S.C. § 522, which the Bankruptcy Court cited in its decision, states

> the value of an interest in real or personal property that the debtor or a dependent of the debtor uses as a homestead shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o)(4). By saying that the Debtor could have claimed the homestead exemption, the Bankruptcy Court assumes that he would have claimed the Rockville Centre Property or his equity in it as an exemption, when he did not do and could not have done.

Finally, even if the homestead exemption had applied to the Chase HELOC, it would not necessarily have exempted the total amount of money in the Chase HELOC. *See, e.g.,* N.Y. CPLR 5206 (exemption not to exceed one hundred fifty thousand dollars in Nassau County *et al.*, and judgement may attach to the debtor's surplus equity, but exemption applies in proceedings to satisfy judgment). "[I]f a debtor possesses equity in a principal residence, that equity, not exceeding [$150,000], is exempt from the satisfaction of money judgments and, in the event of bankruptcy, is exempt from property of the debtor's bankruptcy estate. New York's Homestead Exemption is simply the right to receive the first [$150,000] in proceeds. The balance of proceeds, if any, is paid to the judicial lien creditor." *Levinson v. R & E Prop. Corp.*, 395 B.R. 554, 557 (E.D.N.Y. 2008) (Spatt, J.) (quoting *In re Giordano,* 177 B.R. 451, 455–57 (Bankr. E.D.N.Y. 1995). For instance, Mrs. Karanasos filed for bankruptcy before N.Y. CPLR 5206 was amended, so she listed a $50,000 exemption on the Rockville Centre Property, which was the exemption allowed at the time, and listed the market value of the property as $575,000.

Therefore, in the Court's view, the Bankruptcy Court's reliance on the homestead exemption was misplaced.

The Court finds that the fact that there was no consideration exchanged, coupled with the badges of fraud found by Judge Bianco, would be sufficient to support a finding of a *prima facie* case of fraudulent intent. *See, e.g., Sicari*, 187 B.R. at 872 ("A presumption of actual fraudulent intent necessary to bar a discharge arises when property is either transferred gratuitously or is transferred to relatives.") (quoting *In re Chastant*, 873 F.2d 89, 91 (5th Cir. 1989) (quoting *In re*

*Butler,* 38 B.R. 884, 888 (Bankr. D.Kan. 1984))); *In re Silverstein*, 151 B.R. 657, 661 (Bankr. E.D.N.Y. 1993) ("The fact that property has been gratuitously transferred raises a presumption that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge under 727(a)(2)."). Nevertheless, the Court considers the other badges of fraud.

### b. As to the Debtor's Financial Condition Before and After the 2008 Transfer

The Bankruptcy Court found that the Debtor's financial condition before and after the 2008 Transfer did not give rise to a suspicion of fraud because the Debtor continued to make mortgage payments; he borrowed on a line of credit; and the trial record is silent as to a precise date of the Debtor's insolvency. However, UGT states that the parties stipulated that the Debtor was in poor financial condition after the 2008 Transfer and/or insolvent. The Debtor argues that since the transaction did not occur under circumstances evidencing an intent to defraud creditors, the timing was not suspicious. The Court again agrees with UGT.

"A classic example of fraud is '[t]he transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property.'" *Ng v. Adler*, 518 B.R. 228, 240 (E.D.N.Y. 2014), *appeal withdrawn* (Feb. 17, 2015) (*In re Pisculli,* 426 B.R. 52, 67 (Bankr. E.D.N.Y. 2010) (*In re Kaiser,* 722 F.2d at 1583)). Here, the parties stipulated that prior to the 2008 Transfer, the Rockville Centre Property was a primary asset of the Debtor, and that after the 2008 Transfer, he "was in poor financial condition and/or insolvent, his liabilities then exceeding his assets." (R. at 31).

The fact that the 2008 Transfer occurred after the commencement of the GE lawsuit is perhaps the most demonstrative fact. The 2008 Transfer occurred several months after UGT commenced the GE lawsuit against the Debtor in state court. The reasonable conclusion is that the Debtor did not want the judgment to attach to the Rockville Centre Property. Mrs. Karanasos

was not a party to the GE lawsuit. The Defendant was, and so he removed himself from the title to Rockville Centre Property to protect that property and his family.

In the Court's view, the Bankruptcy Court's reliance on the Debtor's ability to obtain a line of credit was misplaced. The Debtor took out the business line of credit prior to the 2008 Transfer. Although it is not clear from the record exactly when the business line of credit was obtained, the Debtor testified that he drew from that line of credit and the Chase HELOC in August of 2008. (R. at 95). The 2008 Transfer occurred in December of 2008, after the Debtor had drawn from the business line of credit. The Court also notes that this was not a personal line of credit, but a business line of credit that was personally guaranteed.

Furthermore, merely because the Debtor was able to pay his mortgage does not mean that he was solvent. As the parties stipulated, after the 2008 Transfer, the Debtor's liabilities exceeded his assets. The facts in this case are generally similar to those in *In re Vidro*, 497 B.R. 678 (Bankr. E.D.N.Y. 2013), where the Court found that the defendant had concealed his interest in a residence prior to petitioning for bankruptcy by transferring it to a relative. *Id.* at 688. The Court stated that, "[n]otwithstanding the transfer, the Defendant continued to reside at the Residence and continued to pay the mortgage, real estate taxes, and insurance on the property while taking deductions for the mortgage interest and property taxes on his tax returns. Defendant also continued to pay for the upkeep of the Residence." *Id.*

Therefore, the Court finds that the Debtor's financial condition before and after the 2008 Transfer further contributes to a *prima facie* case of fraud.

### c. As to the Pattern and General Chronology of Events

The Bankruptcy Court further found that the Debtor acted no differently after the 2008 Transfer than he had before. UGT argues that the facts and chronology reveal a pattern of fraud:

the Debtor divested title to the Rockville Centre Property while retaining a secret interest in the Rockville Centre Property to avoid allowing the GE lawsuit judgment from attaching to that property; and he continued to conceal his interest in the Rockville Centre Property when he filed his bankruptcy petition. The Debtor relies on his general arguments concerning the validity of the transfer to rebut UGT's arguments about the timing and pattern of the events. The Court again agrees with UGT.

In the Court's view, the pattern and general chronology of events here is consistent with fraudulent intent. The 2008 Transfer occurred after the GE lawsuit was commenced, but before judgment was entered so that any judgment could not attach to the Rockville Centre Property. The Debtor filed his voluntary petition less than a year after the commencement of the fraudulent conveyance action, and, as Judge Bianco found, continued to conceal his interest in the Rockville Centre Property.

UGT's argument here is instructive:

> By reason of the 2008 Transfer, nearly 6 years after judgment was entered against [the Debtor], [UGT] has been unable to recover anything from [him] while the true nature of [his] continuing interest in the Rockville Centre Property was forced to be discovered and litigated. [] [The Debtor's] 'arrangement' with his wife to remove his name from title to the Rockville Centre Property . . . has proved quite effective in hindering, delaying, or defrauding [UGT].

(UGT's Brief at 20). The Court agrees with UGT's assessment of the Debtor's arrangement with his wife. The general factual chronology and pattern leads to the conclusion that the Debtor was attempting to insulate the Rockville Centre Property from any judgments. *See, e.g., In re Nazzaro*, No. 810-74869-reg., 2013 WL 145627, at *10 (Bankr. E.D.N.Y. Jan. 14, 2013) ("The transfer appears to be part of a scheme to insulate the Debtor from having to repay the Plaintiff in the event the Plaintiff obtained a judgment."); *In re Abramov*, 329 B.R. 125, 131 (Bankr. E.D.N.Y. 2005) ("The evidence demonstrates that the transfer of [the debtor]'s one-half interest in the Forest Hills

residence to his sister, five months before the commencement of this bankruptcy case, was made with intent to defraud the debtors' creditors by reducing the assets available to satisfy their claims."); *In re Silverstein*, 151 B.R. 657, 662 (Bankr. E.D.N.Y. 1993) ("The reason for the transfer was to remove his major asset from the reach of his creditors while retaining all the benefits of ownership during a period where he believed the financial condition of his business might deteriorate further.").

The Bankruptcy Court relied on the fact that "UGT did not introduce any evidence of Debtor going on wild spending sprees or converting nonexempt assets into exemptible assets." (R. at 229). However, as the Second Circuit has said, "[the debtor's] argument that the facts of this case do not fit the 'prototype' of an intent to defraud case is factually incorrect and irrelevant. Fraudulent acts are as varied as the fish in the sea. Thus, the fact that the transfers in question did not occur on the 'eve of bankruptcy' . . . [is] insignificant. The intent to defraud is obvious." *Kaiser*, 722 F.2d at 1583.

Therefore, the Court finds that those badges of fraud also contribute to a finding of a *prima facie* case of fraudulent intent.

### d. As to the Collective Weight of the Badges of Fraud

Accordingly, the Court finds that UGT met its burden of proving, by a preponderance of the evidence, that the Debtor harbored an improper intent to hinder, delay, or defraud a creditor by concealing his interest in the Rockville Centre Property, and that the improper intent began more than a year before the filing of the petition and continued through that filing period. *See, e.g., In re Gardner*, 384 B.R. 654, 665 (Bankr. S.D.N.Y. 2008) ("[T]he court also finds that Debtor's concealment of assets began more than a year before the filing of the petition and continued until

the trial of this adversary proceeding. A discharge is therefore denied based on the Debtor's intentional concealment of assets in an attempt to defraud creditors under § 727(a)(2).").

The Court bases its finding upon the fact that every badge of fraud weighed against the Debtor. However, the Court also notes that not every "badge of fraud" need be present in order to make a finding of fraud. *See, e.g., In re Abramov*, 329 B.R. 125, 131 (Bankr. E.D.N.Y. 2005) (finding fraud where the court examined three of the badges of fraud); *In re Antoniou*, 515 B.R. at 19 (citing to *Kaiser*, which found fraud based upon the presence of two badges of fraud and stating that "[t]he presence of several badges of fraud is sufficient grounds for a bankruptcy court to conclude that the Debtor acted with intent to hinder, delay, or defraud creditors.").

Thus, UGT presented a *prima facie* case of fraudulent intent, and, for the reasons set forth above, the Court also finds that the Debtor did not offer credible evidence to rebut the *prima facie* case of fraud. *See In re Dubrowsky*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (Spatt, J.) ("Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden shifts to the debtor to provide evidence to rebut the plaintiff's *prima facie* case."); *In re Gollomp,* 198 B.R. 433, 440 (S.D.N.Y. 1996) (same); *see also Sicari*, 187 B.R. at 878 ("[Debtor] failed to rebut Plaintiff's case with credible testimony or with any documentary evidence, such as bank statements, which should have been readily available to him."). Namely, the Court does not accept the Debtor's argument that the 2008 Transfer was a legitimate exchange between him and his wife where each side received adequate consideration, nor the implication from that argument that any suspicious timing was a coincidence.

Therefore, UGT has satisfied its burden for establishing the requisite elements under § 727(a)(2)(A), and the Debtor's petition for a discharge of his debt is to be denied.

### 2. As to the Denial of a Discharge Under Section 727(a)(4)(A)

Section 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless—
(4) the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). "To prove an objection to discharge under § 727(a)(4)(A), the creditor must prove: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Dubrowsky*, 244 B.R. at 572 (Spatt, J.) (quoting *In re Beaubouef*, 966 F.2d at 178; *Sicari*, 187 B.R. at 880) (*citing Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987))). As stated above, Judge Bianco found that the Debtor made two false oaths, and remanded to the Bankruptcy Court solely to determine whether the Debtor made those false oaths with fraudulent intent. Fraudulent intent can be proven by evidence of either an actual intent to deceive or a reckless disregard for the truth. *Adler v. Ng*, 395 B.R. 827, 843 (E.D.N.Y. 2008). The badges of fraud discussed above are also relevant for this determination. *Kaiser*, 722 F.2d at 1582.

Judge Bianco found that the Debtor had committed false oaths. On remand the burden was on the Debtor to provide credible explanations for those false oaths. *See In re Murray*, 249 B.R. 223, 228 (E.D.N.Y. 2000) ("Where it reasonably appears that the oath is false, the burden falls upon the debtor to come forward with evidence to prove that it was not an intentional misrepresentation. If the debtor fails to provide such evidence or a credible explanation for his failure to do so, a court may infer fraudulent intent.") (quoting *In re Gollomp*, 198 B.R. 433, 437 (S.D.N.Y. 1996) (quoting *In re Arcuri*, 116 B.R. 873, 884 (Bankr. S.D.N.Y. 1990))).

### a. As to the Debtor's False Oath About His Interest in the Rockville Centre Property

The Bankruptcy Court found that the Debtor did not fraudulently intend to omit his interest in the Rockville Centre Property. UGT argues that the same badges of fraud discussed above apply here; that the Debtor's pattern of lies and omissions give rise to fraudulent intent, and that each omission at least exhibits a reckless disregard for the truth. In his brief, the Debtor does not address UGT's arguments in any meaningful way.

First, the Court notes that, on remand, the burden was on the Debtor, and, as the Bankruptcy Court said, "there is no direct evidence in the [] record as to why Debtor failed to list any interest in the [Rockville Centre Property]." (R. at 232). Second, the Court relies on the badges of fraud discussed above regarding the Debtor's interest in the Rockville Centre Property. The Court finds that the Debtor's failure to list his interest in the Rockville Centre Property was part of his ongoing scheme to conceal his interest in that property. The Debtor retained a secret interest in the Rockville Centre Property: he paid the mortgage; he used the Chase HELOC that encumbered it to invest in another property; and he used the property as a basis for a tax exemption.

Finally, the Court finds that the Debtor's pattern of omissions requires a finding of fraudulent intent. "The Second Circuit has recognized that fraudulent intent may be inferred from a series of incorrect statements and omissions contained in the schedules." *In re Moreo*, 437 B.R. 40, 62 (E.D.N.Y. 2010). "Where there has been a 'pattern' of falsity, or a 'cumulative effect' of falsehoods, a court may find that [fraudulent] intent has been established." *Abraham v. Stuart*, No. 15-cv-04864, 2016 WL 4045432, at *7 (E.D.N.Y. July 28, 2016) (quoting *Monety Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993)). Stated otherwise,

> an occasional omission of facts is seldom sufficient to establish a claim of false oath. Numerous omissions in statement of financial affairs and schedules taken together warrant the conclusion of a reckless disregard for the truth by the debtor. Such reckless disregard for the truth is recognized to be equivalent to fraudulent intent to commit a false oath. Numerous omissions that display a pattern of misleading conduct are sufficient to establish a fraudulent false oath.

*In re Bressler*, 387 B.R. 446, 462 (Bankr. S.D.N.Y. 2008) (quoting *Reynolds v. Trafford (In re Trafford),* 377 B.R. 387, 394 (Bankr. M.D. Fla. 2007) (internal alterations omitted)). Here, the Debtor omitted his interest in the Rockville Centre Property; omitted his status as a defendant in the Fraudulent Conveyance Action; and used the term "sole tenant" to misstate his ownership in the Manhattan Property. Although Judge Bianco previously ruled that the Debtor's use of the term sole tenant, "even if false, [] [] was not fraudulent," *Karanasos*, 2014 WL 4388277, at *12, the Court finds it instructive in the current analysis.

The Bankruptcy Court found otherwise because it said that "UGT was not able to articulate a theory under which Debtor could reasonably believe he would benefit by listing [the Rockville Centre Property] as his address, listing UGT as a creditor and listing the lawsuit in which UGT obtained a judgment against Debtor, but concealing a secret interest in the Residence, particularly given that UGT had filed the Fraudulent Conveyance Action**.**" (R. at 233).

However, the Bankruptcy Court acknowledged that "because the District Court has found that Debtor made two false statements, the burden has shifted to Debtor to provide a credible explanation for making those statements." (R. at 231). Yet, in its decision the Bankruptcy Court apparently placed the onus on UGT to either "articulate a theory under which Debtor could reasonably believe he would benefit" by not listing the Rockville Centre Property (R. at 232), or "point[] to any evidence in the trial record that shows that Debtor's failure to disclose the [Rockville Centre Property] . . . exhibited a reckless indifference for the truth." (*Id.* at 233). The Bankruptcy Court then went on to list the ways in which UGT did not meet these burdens. This

is contrary to the Bankruptcy Court's own standard that it set for the case on remand: that the Debtor had to provide credible explanations for the false statements. The Debtor did not provide a credible explanation, and because the badges of fraud weigh against the Debtor, the Court finds that UGT has met its burden under Section 727(a)(4)(A).

Judge Bianco suggested in his decision that the Bankruptcy Court should re-examine its initial finding that there was no fraudulent intent. He said, "[a]lthough debtor failed to provide an explanation for this omission, the Bankruptcy Court found no fraudulent intent on the part of debtor. However, the Bankruptcy Court's determination on this issue was contingent upon its finding that debtor had not concealed an interest in the Rockville Centre Property. The Bankruptcy Court should re-evaluate this conclusion in light of the fact that debtor not only failed to list the fraudulent conveyance action, but also failed to list his interest in the Rockville Centre Property." *Karanasos*, 2014 WL 4388277, at *13.

In finding that "[t]here is no evidence in the record from which this Court can conclude that Debtor subjectively believed that he could obtain an advantage by failing to disclose an interest in the [Rockville Centre Property]," (R. at 234), the Bankruptcy Court apparently discounted the fact that the Debtor has effectively hindered and delayed these bankruptcy proceedings and any recovery by UGT in either civil action, for years by concealing his interest in the Rockville Centre Property. Furthermore, as Judge Bianco pointed out, "[a] debtor may not pick and choose among his assets and holdings so as to schedule only those which he may deem to be valuable, important or relevant. Rather, a debtor is obliged to completely and accurately list all property of every kind and nature, tangible and intangible, legal and equitable, which may comprise his bankruptcy estate, and to respond truthfully to all questions in the Schedules and Statement of Financial Affairs." *Karanasos*, 2014 WL 4388277, at *12 (quoting *Sicari*, 187 B.R. at 881); *see also In re Haddad*,

No. 15-74327-REG, 2016 WL 4523829, at *2 (Bankr. E.D.N.Y. Aug. 26, 2016) ("A debtor is obligated to disclose even worthless assets, as it is not for the debtor to determine whether the asset has value or is important to disclose.").

The Bankruptcy Court found that the Debtor did not exhibit a reckless disregard for the truth. In doing so, it examined the factors that some courts in the Second Circuit have used to determine whether a debtor exhibited such a state of mind: "(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." *Gobindram v. Bank of India*, 538 B.R. 629, 638 (E.D.N.Y. 2015) (quoting *In re Antoniou,* 515 B.R. at 24).

The Bankruptcy Court said that although the Debtor failed to disclose an ownership interest in the Rockville Centre Property, which the parties stipulated had been his primary asset, he attempted in good faith to comply because he listed the HELOC which encumbered the Rockville Centre Property and listed the property as his mailing address. However, although the Debtor did list the Chase HELOC, he did not detail which property the HELOC encumbered, as the Schedule requires. Also, as stated above, although the Debtor did list the Rockville Centre Property as his address, he did not list his ownership interest. The Debtor said "[l]iving at a premises does not equal ownership of the premises." (Appellee Karanasos' Brief at 2). So that the Debtor failed to list his interest in his primary asset. The information sought could not be more important, and the Debtor disregarded the detail sought by the bankruptcy schedule when he listed the Chase HELOC but did not detail which property it encumbered.

As to the Debtor's sophistication and background, the Bankrupt Court said, "there is no dispute that Debtor possessed the financial sophistication to invest in the Manhattan Property, run his own businesses, and had previously been employed in the title insurance industry." (R. at 233). This Court agrees and finds that because the Debtor was a sophisticated investor who had worked in the title insurance industry, he, at the very least, exhibited a reckless indifference for the truth.

Finally, the Bankruptcy Court stated that the Debtor relied on his counsel's advice in preparing his schedules. However, the record does not reveal that the Debtor specifically relied on counsel's advice when he omitted his interest in the Rockville Centre Property. In fact, when asked about listing his interest in the Rockville Centre Property, the Debtor mentioned protecting his family. (R. at 176). Nor is it clear from the record that debtor's counsel was "fully aware of all the relevant facts." *Dubrowsky*, 244 B.R. at 573 (Spatt, J.) ("An explanation by the debtor that he acted on advice of counsel, who was in turn fully aware of all the relevant facts, generally rebuts an inference of fraud.") The Court finds that the third factor that courts consider when deciding whether there was a reckless disregard for the truth also weighs against the Debtor, in that there is insufficient evidence that he blamed recurrent errors on carelessness and there is evidence that he failed to take advantage of opportunities to clarify or correct inconsistencies.

Accordingly, the Court finds that the Debtor acted with fraudulent intent when he omitted his interest in the Rockville Centre Property from his bankruptcy petition, and that UGT has met their burden under Section 727(a)(4)(A) with regard to that false oath. Therefore, the Debtor's petition for a discharge of debt should also be denied pursuant to Section 727(a)(4)(A).

**b. As to the Debtor's Failure to list the Fraudulent Conveyance Action**

The Bankruptcy Court found that the Debtor did not possess a fraudulent intent when he omitted the fraudulent conveyance action from his Petition. It found that the badges of fraud were

not present, and that the Debtor provided a credible explanation for his omission. UGT argues that the omission was in furtherance of the Debtor's attempt to conceal his interest in the Rockville Centre Property. In his brief, the Debtor did not respond to UGT's arguments in any meaningful manner. The Court finds that the facts supported a finding of the Debtor's pattern of omissions and resulting fraudulent intent.

The fraudulent conveyance action sought a judgment declaring that the 2008 Transfer was fraudulent and void. This was a suit regarding the Debtor's concealed interest in the Rockville Centre Property. It follows logically that if the Debtor fraudulently intended to conceal his interest in that property, that he would want to conceal any suit regarding that concealed interest. The Court's analysis regarding the Debtor's omission of his interest in the Rockville Centre Property is therefore also instructive.

When asked during the live portion of the bankruptcy trial about the fraudulent conveyance action, the Debtor repeatedly said that he didn't remember the details of the second suit. (R. at 173, 175 ("I can't recall that there was a second lawsuit. I can't remember.")). As to advice of counsel in this regard, it is not clear that counsel had the evidence of the second suit, or that he actually relied on his attorney's advice when he omitted it from his schedules. (*See* R. at 172 (the Debtor first stating that he did not turn a copy of the lawsuit over to his attorney, then changing his answer without a reason)). Nevertheless, the Debtor testified that he had reviewed the petition and that it was all correct. In the Court's opinion, this was part of a pattern of omissions meant to conceal the Debtor's interest in the Rockville Centre Property, and, contributes to the Court's finding of fraudulent intent upon that pattern and the badges of fraud discussed above. *See Abraham*, 2016 WL 4045432, at *7 ("Where there has been a 'pattern' of falsity, or a 'cumulative effect' of falsehoods, a court may find that [fraudulent] intent has been established.") (quoting *In*

*re Maletta*, 159 B.R. at 112). The Court finds that the Debtor did not provide a reasonable explanation for his omission of the Fraudulent Conveyance Action.

Accordingly, the Court finds that UGT met its burden pursuant to § 727(a)(4)(A) regarding the Debtor's omission of the fraudulent conveyance action, and the Debtor's petition for discharge also must be denied under that theory.

### III.  CONCLUSION

Accordingly, the decision of the Bankruptcy Court is reversed to the extent that the Debtor's fraudulent concealment of his interest in the Rockville Centre Property necessitates a denial of discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and the Debtor's false oaths regarding his interest in that property and the lawsuit surrounding that concealed interest necessitate a denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A). The case is remanded to the Bankruptcy Court for the entry of judgment in favor of UGT, and for any further proceedings required consistent with this Memorandum and Order. The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

December 27, 2016

_____*/s/ Arthur D. Spatt*_____

ARTHUR D. SPATT

United States District Judge